HEISE et al. v. SELECTED SECURITIES CO.

(Supreme Court, Special Term, New York County.   August 28, 1907.)

CHATTEL MORTGAGES—BILL OF SALE—WHEN A MORTGAGE.

Evidence, in an action to declare a transaction, appearing on the face of the instruments to be an absolute sale, to be a loan, *held* to entitle plaintiffs to that relief.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Chattel Mortgages, § 45.]

Action by Annie Theresa Hearne Heise and another against the Selected Securities Company.   Finding for plaintiffs.

Warner, Wells & Korb (James W. Osborne, of counsel), for plaintiffs.

Wertheimer & Duffy (Louis Wertheimer, of counsel), for defendant.

GIEGERICH, J.   Action to set aside assignment, bill of sale, mortgage, and bond, and to have a transaction appearing on the face of the instruments as an absolute sale declared to be a loan.   The action is brought for the purpose of having declared fraudulent, usurious, and void an assignment, bill of sale, bond, and mortgage by which the sum of $12,000 is transferred and secured by the plaintiff Heise to the defendant.   Although the relief prayed for in the complaint is of the character just stated, it is nevertheless said in the brief that the plaintiffs propose and are ready, upon the cancellation and surrender of these obligations, to repay to the defendant, with interest, the amounts actually received by the plaintiff Heise in the transaction.

The facts in the case necessary to be stated are as follows:   The plaintiff Heise is the beneficiary under the will of her father, Edwin R. Hearne, who died March 11, 1899, leaving a will, by the terms of which, after the payment of certain bequests, the residue of his estate, both real and personal, was left to his two brothers in trust to divide the income thereof among his four daughters, of whom the plaintiff Heise is one, for a period of 10 years succeeding his death, and at the end of that time, to wit, on March 11, 1909, to divide the principal, with the provision that if any of his daughters should die before such date her share should go to her issue, or in default of such issue to her surviving sisters.   The estate consisted of real property of the value of about $100,000, besides stocks and other securities amounting approximately in value to $300,000.   The share of the plaintiff Heise of the income has been each year from $6,000 to $9,000.   The trustees of the estate are exempt by the provisions of the will from giving bonds, but are men of wealth and high character.   The assignment to the defendant, which was made on the 28th day of March, 1905, is expressly subject to prior assignments of $13,000 to the Eagle Insurance Company of London, made in February, 1904, and of $7,550 to the same company made in October of that year, and an assignment of $12,000 made to Julius Nahm in February, 1905, making an aggregate charge prior to the interest of the defendant of $32,500.   The assignments to the Eagle Insurance Company of London were negotiated through the firm of Jenner & Co. of this city, and no claim is made of any intimacy

of connection between those two assignments and the one in suit. It is argued, however, that the Nahm transaction of $12,000, made in February, 1905, and a transaction for $6,000, made the month before, namely, in January, 1905, with one Hyman, are so connected with the present transaction as to throw great light upon it. A review of these three transactions shows as follows: In the Hyman matter, for an assignment of $6,000, with interest from and after March 11, 1909, the plaintiff Heise nominally received $4,780.88; a balance of $1,219.12 being interest on the loan at 6 per cent. from the date of the transaction down to the time of payment, namely, March 11, 1909. Hyman's check for $4,780.88, to the order of the plaintiff Heise was indorsed by her back to Wertheimer, who represented Hyman in that transaction, and who is the attorney for the defendant in this action, and the amount was then distributed as follows: Wertheimer received $2,370, the further sum of $687.01 was paid to the attorneys of the plaintiff Heise in the matter, while the sum of $310.88 was paid to one William B. Wolfe, who acted as a broker, leaving the net proceeds to the plaintiff Heise of $1,412.99. This transaction took place in January, 1905. In February, 1905, what may be denominated the Nahm transaction took place. The $12,000 assigned in that case represented a loan of $9,368.55; a balance of $2,361.45 being interest. The $9,638.55 was distributed, as before, by means of Wertheimer's checks to the order of the plaintiff Heise as follows: $6,000 went to Nahm in payment of his claim, including, without any rebate or allowance, the sum of $1,219.12 interest; $2,175 went to Wertheimer; the balance of $1,463.55 represented the amount received by the plaintiff Heise. This transaction took place in February, 1905. In March, 1905, the plaintiff Heise made the present assignment, receiving therefor two checks of Wertheimer aggregating $2,500, $400 of which was turned over to her husband as a commission on the transaction, leaving her as net proceeds the sum of $2,100, which she testified was all she had expected and the amount which she had agreed upon with Wertheimer as the sum she was to receive in the transaction. A recapitulation of these three transactions shows, therefore, that the plaintiff Heise received the following respective amounts: $1,412.99, $1,463.55, and $2,100, making an aggregate of $4,976.54 received by her, for which she has assigned $24,000, payable within about four years from the date of her receipt of such amounts. That the Hyman and the Nahm transactions were loans, and that the assignments were in exactly the amounts of such loans, with interest added up to March 11, 1909, the date when the trust would terminate and the loans become payable, is conceded and is manifest from the figures. The $4,780.88 nominally received by the plaintiff Heise on January 13, 1905, with interest at 6 per cent., would amount to $6,000 on March 11, 1909, and the $9,638.55 nominally received by her on February 16, 1905, would similarly amount to $12,000 on March 11, 1909. She claims that she understood that the transaction in suit with the defendant was in like manner a loan, but this is disputed, and it is claimed that, instead of being a loan, it was an outright sale. Such improvidence on her part and such inadequacy of consideration as would be shown by the sale of a $12,000 interest, payable in four years, for so small a sum as $2,100, or even $2,500, accepting the defendant's

version as to the consideration, throw grave doubt upon the validity
of the transaction.  There are present the added circumstances that she
was pregnant and in poor health at the time; that her husband was
intemperate and beat her, and was otherwise cruel to her, and kept in-
sisting that she should obtain more and more money for his support,
he having performed no labor and having earned no money during the
period of their marriage, but, on the contrary, having wasted sums she
gave him in gambling and in unsuccessful farming experiments and in
extravagant living.  Furthermore, she testified that when the transac-
tion in suit was being closed she asked Mr. Wertheimer for time to
bring to his office her attorney, who had represented her previously;
but Wertheimer replied that such a course would be unnecessary, that
he would act as her attorney, and that she could rely upon him, and that
the papers were all right and were just like those in the other cases.
In reliance upon this she executed the papers as prepared and presented
to her without reading them.   She is contradicted on this point by
Wertheimer, but is corroborated by the witness Levy, who was dis-
interested, and also by her husband.  On certain other points on which
she was in issue in her testimony with the testimony of Wertheimer
she is corroborated by her former attorney.  For these reasons and oth-
ers I have credited her version where it comes in conflict with Wert-
heimer's, who was the only witness called on behalf of the defendant.
One point on which there was a difference between her and her former
attorney, on the one hand, and the witness Wertheimer, on the other,
was as to whether or not just previous to the transaction in question
Wertheimer had written her threatening her with suit unless she called
and closed the transaction.   It ought also to be mentioned as throwing
light upon the connection between the three transactions above dis-
cussed that the defendant the Selected Securities Company has its of-
fice in the office of the witness Wertheimer, who acts as its attorney,
and who alone represented it in the transaction in suit.   Hyman also,
who made or in whose name was made the first or $6,000 loan, is an
officer of the defendant company, and makes his headquarters in the
office of the witness Wertheimer.   On behalf of the defendant, it is
argued that the transaction challenged, viewed as a sale, is not so im-
provident and the consideration received is not so inadequate as ap-
pears on the surface, because of the fact that there was a prior charge
upon the interest of the plaintiff Heise of upwards of $32,000, and that
her interest was contingent upon her living until the expiration of the
trust, that the estate is in the hands of nonresident trustees, who are not
under bonds, and that it consists to a great extent of United States
Steel preferred stock, which has fluctuated greatly in market value.

When examined, however, these various points are found to have
little force.  The contingency of the death of the plaintiff Heise before
the expiration of the trust term was guarded against by insurance poli-
cies duly assigned to the defendant.   The trustees, although nonresi-
dents and not under bonds, are experienced and successful business
men of high character and of wealth, and the value of the estate, taken
as a whole, was such that there could never have been any serious
question but that the plaintiff's share would be much more than suffi-
cient to cover the assignment in question, together with all previous

charges. In this connection also it ought to be said that the decision is based not alone nor chiefly upon the ground of inadequacy of consideration, but upon the other grounds above discussed. After the transaction above detailed, but before the action was commenced, the plaintiff Heise assigned all her interest in the estate to the defendant Wells, as trustee. The action was originally brought in her name alone, but he was subsequently joined as a plaintiff.

Upon all the facts I am of the opinion that the plaintiffs are entitled to judgment as prayed for, but only on condition that they repay to the defendant the sum of $2,100, the amount agreed upon and received by the plaintiff Heise, with interest thereon, and also the amount paid for the insurance policy taken as collateral security for the loan, with interest on such premium, upon a proper reassignment of such policy from the defendant to the plaintiffs. If the defendant's counsel thinks any other conditions should be imposed, suggestions to that end will be considered upon the settlement of the decision, of which let five days' notice be given.